# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TREASURE L.[1]**, | Case No. 6:19-cv-583-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **ANDREW M. SAUL,** Commissioner of Social Security, | |
| Defendant. | |

Ari D. Halpern, HALPERN LAW GROUP PC, 62910 O.B. Riley Road, Suite 100, Bend, OR 97703. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Lisa Goldoftas, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Treasure L. ("Plaintiff") seeks judicial review of the final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying her application for disability

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

insurance benefits ("DIB"). In response, the Commissioner conceded error and moved for an order remanding for further administrative proceedings to consider additional evidence that Plaintiff submitted after the administrative hearing. Plaintiff replied, arguing that the Court should remand this case for a finding of disability and the payment of benefits. For the reasons stated below, the Court remands for a finding of disability and the immediate payment of benefits.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the

Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff applied for DIB in August 2015, alleging disability beginning June 15, 2015. AR 201. Plaintiff was born on March 10, 1971 and was 44 years old as of the alleged disability onset. *Id.* The agency denied her claim both initially and upon reconsideration, and Plaintiff requested a hearing. AR 92-101, 104-115. Plaintiff appeared for a hearing by videoconference before an Administrative Law Judge ("ALJ") in October 2017. AR 65-92. On February 28, 2018, the ALJ issued a decision denying Plaintiff's claim for benefits. AR 47-64. Plaintiff requested review of the hearing decision, which the Appeals Council denied in February 2019. AR 1. Accordingly, the ALJ's decision became the final decision of the agency. Plaintiff seeks judicial review of the agency's final decision.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.      Is the claimant performing "substantial gainful activity?" 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
significant mental or physical duties done or intended to be done for pay
or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
such work, she is not disabled within the meaning of the Act. 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's
regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
impairment or combination of impairments is "severe" if it significantly
limits the claimant's physical or mental ability to do basic work activities.
20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
this impairment must have lasted or be expected to last for a continuous
period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the
impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
the listed impairments, the analysis continues. At that point, the ALJ must
evaluate medical and other relevant evidence to assess and determine the
claimant's "residual functional capacity" ("RFC"). This is an assessment
of work-related activities that the claimant may still perform on a regular
and continuing basis, despite any limitations imposed by his or her
impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC
assessment? If so, then the claimant is not disabled. 20 C.F.R.
§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience,
is the claimant able to make an adjustment to other work that exists in
significant numbers in the national economy? If so, then the claimant is
not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act ("Act") through December 31, 2020 and proceeded to the sequential analysis. AR 52. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 15, 2015. *Id.* At step two, the ALJ determined that Plaintiff suffered from two severe impairments: multiple sclerosis ("MS") and migraines. *Id.* At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity a listed impairment. *Id.* The ALJ reasoned that Plaintiff did not show any alteration of consciousness and thus did not meet any of the 11.00 listings for seizure disorders. The ALJ stated that Plaintiff did not meet either of the 11.09 listings for MS because she did not have "disorganization of motor function of any extremity" and "only complained of minor hand tremors." AR 53. Between step three and step four, the ALJ formulated Plaintiff's RFC. The ALJ determined that Plaintiff could

> perform sedentary work as defined in 20 CFR 404.1567(a) except
> she can only occasionally balance, stoop, crouch, kneel, and crawl
> and never climb ladders, ropes and scaffolds. She can have no
> exposure to hazards such as machinery and unprotected heights.

AR 53. At step four, the ALJ found that Plaintiff could perform her past relevant work as an educational consultant. AR 56. In the alternative, at step five the ALJ found that "there are other jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform." AR 57. Thus, the ALJ concluded that Plaintiff is not disabled.

## DISCUSSION

Plaintiff alleges that the ALJ erred by: (1) finding that Plaintiff did not meet or equal any of the presumptively disabling listings at step three; (2) improperly rejecting the medical opinion testimony of Dr. Laura Schaben; (3) improperly rejecting Plaintiff's subjective symptom testimony; and (4) improperly rejecting the lay witness testimony of Plaintiff's husband. Because issue (2) is dispositive, the Court does not address issues (1), (3), and (4). Plaintiff also submitted Dr. Schaben's notes from their telephone encounters and a letter from Dr. Schaben (together, the "post-hearing evidence," AR 13-46) to the Appeals Council. The Commissioner agrees that remand is warranted but concedes no specific error and argues that the Court should permit the ALJ to "reevaluate the entire case" in light of new evidence submitted by Plaintiff after the administrative hearing but before the Appeals Council rejected Plaintiff's request for review. ECF 18 at 2.

That is the Commissioner's argument, despite Ninth Circuit precedent holding that remanding for further proceedings under these circumstances "would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) The Court identifies the ALJ's material legal error and then explains why remand for immediate payment of benefits is appropriate.

## A. "Credit-as-True" Framework

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine whether a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* Said otherwise,

> the district court must consider the testimony or opinion that the ALJ improperly rejected, *in the context of the otherwise undisputed record*, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true.

*Id.* (emphasis added). If so, the district court can exercise its discretion to remand for an award of

benefits. *Id.* The district court retains flexibility, however, and need not credit statements as true

merely because the ALJ made a legal error. *Id.* at 408.

## B.  Analysis

### 1.  The ALJ Committed Harmful Legal Error by Improperly Rejecting the Medical Source Opinion of Dr. Schaben

The ALJ is responsible for resolving conflicts in the medical record, including conflicts

among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes

between the opinions of three types of physicians: treating physicians, examining physicians, and

non-examining physicians. *Garrison*, 759 F.3d at 1012. Generally, "a treating physician's

opinion carries more weight than an examining physician's, and an examining physician's

opinion carries more weight than a reviewing physician's." *Holohan*, 246 F.3d at 1202. If a

treating physician's opinion is supported by medically acceptable techniques and is not

inconsistent with other substantial evidence in the record, the treating physician's opinion is

given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion

that is not contradicted by the opinion of another physician can be rejected only for "clear and

convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a

treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must

provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance

on a claimant's discredited subjective complaints, inconsistency with medical records,

inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or

that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554

F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d

at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison¸* 759 F.3d at 1013; *see also Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996) (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

Dr. Schaben was one of Plaintiff's treating physicians and saw Plaintiff every three to six months since they first started meeting in June 2011. AR 514. Dr. Schaben provided a medical source opinion in July 2016 and an update in September 2017. In her July 2016 opinion, Dr. Schaben listed Plaintiff's extensive symptoms: intention tremor, chronic fatigue, muscle fatigue, muscle spasticity, numbness, and difficulty concentrating. *Id.* Dr. Schaben noted that

Plaintiff suffers from "significant reproducible fatigue of motor function with substantial weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved in the multiple sclerosis process." AR 515. Dr. Schaben also translated these clinical findings into functional limitations. She opined that Plaintiff could rarely lift ten pounds and could lift less than ten pounds only on occasion. AR 516. Dr. Schaben estimated that Plaintiff's symptoms would cause her to miss more than four days of work each month, and that Plaintiff would require unscheduled breaks every one to two hours. AR 516-17. In September 2017, Dr. Schaben noted that Plaintiff's symptoms had gotten "slightly worse" since July 2016. AR 568.

The ALJ rejected Dr. Schaben's medical opinion because there were "few objective findings supporting weakness, tremors, etc. that would support such extreme limitations and Dr. Schaben actually saw [Plaintiff] rarely during the period at issue." AR 55. Because Dr. Schaben is a treating physician, the question is whether these are "specific and legitimate" reasons to discredit Dr. Schaben's opinion. *Ryan*, 528 F.3d at 1198.

An ALJ may reject the opinion of a treating physician if it is "brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228. That is not the case with Dr. Schaben's medical source opinion. A physician's reports should show how a claimant's symptoms translate into specific functional deficits which preclude certain activities. *Morgan,* 169 F.3d at 601. That is exactly what Dr. Schaben's medical source opinion here achieves. *See* AR 516-17. Dr. Schaben first described Plaintiff's clinical signs and symptoms and then translated them into what Plaintiff "[could] still do despite impairments(s) and [her] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (defining medical source opinion).

Dr. Schaben supported her opinion with clinical findings. Clinical findings are not just laboratory results and MRIs, but also clinical signs— "abnormalities which can be observed," unlike subjective statements about a claimant's description of an impairment, which are symptoms. 20 C.F.R. §§ 404.1528, 416.928. In her July 2016 evaluation, Dr. Schaben observed that Plaintiff suffered from intention tremor, muscle spasticity, and increased deep reflexes, among other clinical signs. AR 514. Even absent these clinical findings, Plaintiff correctly points out that "[m]erely to state that a medical opinion is not supported by enough objective findings does not achieve the level of specificity" necessary to reject that medical opinion. *Rodriguez v. Bowen*, 876 F.2d 759, 762-63 (9th Cir. 1989). Dr. Schaben also properly supported her medical opinion with Plaintiff's subjective complaints. *See Ryan*, 528 F.3d at 1199 ("[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations."). Thus, the ALJ did not provide specific and legitimate reasons and erred by rejecting Dr. Schaben's medical source opinion.

In the alternative, as discussed below, the Court properly considers the post-hearing evidence in determining whether the ALJ committed harmful legal error. Although it is unneeded to reach that conclusion, the post-hearing evidence further supports the Court's conclusion that the ALJ's decision is not supported by substantial evidence. For example, the ALJ erroneously noted that "Dr. Schaben actually saw [Plaintiff] rarely during the period at issue," even though Dr. Schaben saw Plaintiff about every six months. AR 55. In the post-hearing evidence, Dr. Schaben explained that visit frequency "is no indication of the severity of [Plaintiff's]

limitations" and that a visit every six months is the "typical visit schedule" for all Dr. Schaben's

MS patients, "including those who are already deemed disabled." AR 13.

### 2.  The Record is Fully Developed and Free from Conflicts and Ambiguities

The Commissioner argues that the record contains conflicts and ambiguities and that

further proceedings would permit the ALJ to "reevaluate the entire case" given the post-hearing

evidence. ECF 18 at 2. Plaintiff argues that the record—viewed both with and without the post-

hearing evidence—is free from conflicts and ambiguities. Plaintiff also argues that remanding to

the ALJ would be improper because the record is already complete—the Appeals Council

considered the post-hearing evidence and incorporated it into the administrative record. The

Court agrees with Plaintiff on each point.

### a.    The Administrative Record is Complete

The Appeals Council considered the post-hearing evidence but declined to review

Plaintiff's case because the post-hearing evidence did "not show a reasonable probability that it

would change the outcome of the decision." AR 2. It defies logic to remand for consideration of

evidence that the Appeals Council itself found immaterial. If the Appeals Council wanted the

ALJ to consider the post-hearing evidence, it "could have remanded for a further hearing so that

the ALJ . . . could take further evidence." *Ramirez v. Shalala*, 8 F.3d 1449, 1455 (9th Cir. 1993)

Yet "[i]t chose not to do so." *Id.*

Although the ALJ declined to review Plaintiff's case based on the post-hearing evidence,

this Court properly considers the post-hearing evidence in reviewing the ALJ's decision. The

Ninth Circuit has held "that when a claimant submits evidence for the first time to the Appeals

Council, which considers that evidence in denying review of the ALJ's decision, the new

evidence is part of the administrative record, which the district court must consider in

determining whether the Commissioner's decision is supported by substantial evidence." *Brewes*

*v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012)." That is exactly what happened in Plaintiff's case. Plaintiff's attorney submitted for the first time the post-hearing evidence to the Appeals Council along with a "good cause" letter explaining why it was not submitted earlier.[2] AR 358-59. The record shows that the Appeals Council accepted and considered the post-hearing evidence because the Appeals Council did not send Plaintiff notice explaining why it did not accept the evidence. *See* 20 C.F.R. § 404.970(c) (explaining that the Appeals Council will send a notice to the claimant explaining why it did not consider additional evidence). And after accepting the post-hearing evidence and considering it, the Appeals Council still declined to review Plaintiff's case. AR 2. The post-hearing evidence is "part of the administrative record" and this Court "must consider [it] in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes*, 682 F.3d at 1159-60. Thus, even though the ALJ did not consider the post-hearing evidence, the Court finds that the administrative record is complete.

### b. The Administrative Record is Free from Conflicts and Ambiguities

The Commissioner asserts that "outstanding issues must be resolved, and further administrative proceedings would be useful for evaluating Plaintiff's impairments and limitations with the record supplemented by Plaintiff after the ALJ issued a decision." ECF 18 at 7. But the Court finds that the record is free of conflicts and ambiguities and that there are no outstanding issues to resolve. *Dominguez,* 808 at 407. Further proceedings would not be useful because the post-hearing evidence does not contradict the record that was before the ALJ—it strengthens

---

[2] The Commissioner's argument that Plaintiff violated the "five-day rule" is unavailing. The ALJ herself found that Plaintiff complied with the "five-day rule," AR 50, and the Court agrees that Plaintiff made "every effort to ensure that the ALJ receive[d] all of the evidence . . . no later than 5 business days before the date of the scheduled hearing," 20 C.F.R. § 404.935(a)).

Plaintiff's case. The Commissioner fails to explain how the post-hearing evidence affects, to Plaintiff's detriment, the analysis of the other evidence in the record.

The Commissioner argues that Plaintiff's subjective symptom testimony is inconsistent with her history of travel and her activities of daily living. The Court disagrees. The ALJ acknowledged that "travel/vacationing and a disability are not necessarily mutually exclusive," but without support concluded that Plaintiff's travel "tends to suggest that the alleged symptoms and limitations may have been overstated." AR 54. The only conflict here is in the ALJ's own reasoning. Indeed, a person "does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). That distinction is especially relevant here because Plaintiff suffers from MS with intermittent flare-ups. AR 515, a condition characterized by "[c]ycles of improvement and debilitating symptoms." *Garrison*, 759 F.3d at 1017 (citation omitted). Thus, "a few isolated instances of improvement over a period of months or years" are fully consistent with Plaintiff's subjective symptom testimony.[3] *Id.*

The Commissioner also echoes the ALJ's argument that the testimony of Dr. Rack, a reviewing physician who testified at the administrative hearing, is "quite equivocal" about Plaintiff's level of functioning. ECF 18 at 5. That argument mischaracterizes Dr. Rack's testimony to cast it as ambiguous, when it is quite unequivocal. Dr. Rack testified that Plaintiff "has the remitting and exacerbating type" of MS and "that her illness has gone on over a long enough period of time that it has rendered her, because of the illness, with symptomatology and findings that are disabling in nature." AR 82. Consistent with Plaintiff's subjective symptom testimony and the medical source opinion of Dr. Schaben, Dr. Rack agreed that during flare-ups,

---

[3] For the same reason, there is no conflict between Plaintiff's subjective symptom testimony and the lay witness testimony of Plaintiff's husband.

Plaintiff might need to lie down to rest for up to three or four hours each day. AR 85. Thus, Dr. Rack's testimony is free of ambiguities and does not conflict with the other record evidence.

### 3. The Record Requires a Finding of Disability

When the Court credits Dr. Schaben's improperly rejected medical opinion testimony, a finding of disability is required at both step three and step five. The Court also briefly considers the post-hearing evidence and finds that it supports finding disability at step three and step five. *See Brewes*, 682 F.3d at 1159-60 (holding that the district court properly considers evidence submitted to the Appeals Council even when the Appeals Council declines to review the plaintiff's case).

#### a. At Step Three

At step three of the sequential evaluation process, the ALJ must consider whether a claimant's severe impairments, either separately or in combination, meet or equal one of the presumptively disabling impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii); *see* 20 C.F.R. Part 404, Subpart P, App. 1. To demonstrate that a claimant's impairment is the medical equivalent of one of the listed impairments, the claimant must present medical findings equal in severity to all the criteria of a listing. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis omitted); *see also Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). To meet or equal Listing § 11.09 for MS, Plaintiff must demonstrate "[d]isorganization of motor function in two extremities . . . resulting in an extreme limitation . . . in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities" or "marked limitation in physical functioning" together with marked limitation in one of the following areas: "understanding, remembering, or applying information," "interacting with others," "concentrating, persisting, or maintaining pace," and "adapting or managing oneself." 20 C.F.R. Part 404, Subpart P, App. 1, § 11.09 (describing Listings 11.09A and 11.09B, respectively).

The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of' one of the listed impairments in 20 CFR Part 404, Subpart P, App. 1." AR 52. The ALJ found that Plaintiff does not meet Listing 11.09A or Listing 11.09B because Plaintiff provides no evidence of "disorganization of motor function in any extremity." AR 53. The ALJ also stated that Plaintiff has only complained of "minor hand tremors" and that "there is also no indication that [Plaintiff] has marked difficulty with the [11.09B] criteria." *Id.* Plaintiff contends that the ALJ's step three finding is not supported by substantial evidence and that Plaintiff meets all the requirements of Listings 11.09A and 11.09B.

When fully credited, Dr. Schaben's improperly rejected medical source opinion shows that Plaintiff meets or medically equals Listing 11.09B. Remand for immediate payment of benefits is the proper outcome. *See Lester v. Chater*, 81 F.3d 821,834 (9th Cir.1995) (awarding benefits when improperly rejected evidence, when credited, establishes that a claimant meets or equals one of the listed impairments). In her medical source statement Dr. Schaben noted that Plaintiff does not "have significant and persistent disorganization of motor function in two extremities," which precludes a finding that Plaintiff meets Listing 11.09A. Yet Dr. Schaben opined that Plaintiff suffers from marked limitations in both "physical functioning" and "concentrating, persisting, or maintaining pace," thus satisfying Listing 11.09B.

A "marked" limitation in physical functioning is one that would seriously limit Plaintiff's ability "to independently initiate, sustain, and complete work-related physical activities." 20 C.F.R. Part 404, Subpart P, App. 1, § 11.00G2. Plaintiff "need not be totally precluded from performing a function or activity to have a marked limitation." *Id.* Section 11.02G2 lists "standing" and "walking" as two examples of work-related physical activities. Dr. Schaben

opined that Plaintiff, because of her MS, could stand for only 15 minutes at a time and could walk for only two city blocks "without rest or severe pain." AR 515. That qualifies as a marked limitation in physical functioning. A "marked" limitation in mental functioning is one that seriously limits Plaintiff's "ability to function independently, appropriately, effectively, and on a sustained basis in work settings." 20 C.F.R. Part 404, Subpart P, App. 1, § 11.00G2.

Section 11.00G3b(iii) lists "concentrating, persisting, or maintaining pace" as an example of an area of mental functioning. C.F.R. Part 404, Subpart P, App. 1, § 11.00G3. Dr. Schaben opined that Plaintiff's MS symptoms "would interfere with attention and concentration needed to perform even simple work tasks" for 25 percent or more of each typical workday. AR 517. That qualifies as a marked limitation in mental functioning. Plaintiff meets Listing 11.09B. The post-hearing evidence further confirms that Plaintiff meets Listing 11.09B. For example, Dr. Schaben opined that Plaintiff's "fatigue . . . [has] clearly caused her to be unable to sustain full time work since she stopped working in 2015." AR 14.

### b.  At Step Five

Alternatively, crediting Dr. Schaben's medical source opinion leads to a finding of disability at step five. Dr. Schaben wrote that Plaintiff would, as a result of her MS, miss more than four days of work each month. AR 517. At the administrative hearing, the Vocational Expert ("VE") testified that somebody who missed more than one day of work per month on a regular basis would not be able to maintain full-time employment. AR 89. Dr. Schaben also wrote that Plaintiff could stand and walk for a maximum of two hours each day and sit for a maximum of four hours each day. AR 515-16. The VE also testified that somebody with these mobility limitations would not be able to maintain full-time employment. AR 89.

### 4.  Whether There Is Serious Doubt as to Plaintiff's Disability

The Commissioner, however, argues that the record creates serious doubt that Plaintiff is in fact disabled. *See Garrison*, 759 F.3d at 1021. "Serious doubt" may exist when "the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled," even if the ALJ did not consider that evidence at the hearing. *Dominguez*, 808 F.3d at 407 (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)). The only additional evidence here—the telephone encounter notes and the letter from Dr. Schaben—supports Plaintiff's disability claim. Thus, the record does not create "serious doubt" about whether Plaintiff is disabled.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for an immediate calculation and payment of benefits.

**IT IS SO ORDERED**.

DATED this 5th day of June, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge